**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: May 30, 2023
Date Decided: August 30, 2023

Jeffrey M. Weiner, Esquire
1332 North King Street
Wilmington, DE 19801

Charles J. Brown, III, Esquire
Bradley P. Lehman, Esquire
Gellert, Scali, Busenkell & Brown, LLC
1201 North Orange Street, Suite 300
Wilmington, DE 19801

RE: *Appleby Apartments LP v. Appleby Apartments Associates, L.P.*,
C.A. No. 2022-0325-SEM

Dear Counsel:

I write regarding the plaintiff's exceptions to the Magistrate's Final Report in this matter. In a well-reasoned Final Report, the Magistrate determined that the plaintiff failed to plead its entitlement to specific performance and dismissed the remaining claim for lack of subject matter jurisdiction. She declined to address the applicability of a New Jersey forum selection provision.

The plaintiff avers that these conclusions were in error. After conducting a de novo review, I disagree and overrule the exceptions. The Final Report is adopted and affirmed, except that the defendant's request for fees is remanded for the Magistrate to assess in the first instance.

## I.    BACKGROUND

The factual background of this matter is detailed in the Magistrate's Final Report.[1]  The following summary is limited to the essential facts.

Defendant Appleby Apartments Associates, L.P. ("Associates") owns real property at 401 Bedford Lane in New Castle, Delaware.[2]  Plaintiff Appleby Apartments L.P. ("Apartments") agreed to purchase the property, but the sale never closed.

On or about December 10, 2021, the parties entered into an Agreement of Sale.[3]  The Agreement contemplated a price of $29.4 million for the property.[4]  The Agreement also contained a "time is of the essence" clause, requiring closing to occur within 90 days—on or before March 10, 2022.[5]  Apartments had "the one time right to extend the [c]losing by up to thirty (30) days" if necessary "for approval and

---

[1] Magistrate's Final Report Issued on March 31, 2023 (Dkt. 27) ("Final Report").  The Final Report drew the factual background from the plaintiff's amended complaint.  *Id.* at 1 n.1; *see* Am. Verified Compl. for Declaratory J. and Specific Performance (Dkt. 15) ("Am. Compl.").  Unless noted otherwise, I similarly draw my summary of the facts from the amended complaint and the documents it incorporates by reference.

[2] Am. Compl. ¶ 3; *see* Final Report 2.

[3] Am. Compl. ¶ 11.

[4] Am. Compl. Ex. A ("Agreement") ¶ 2.1.

[5] *Id.* ¶ 3.1 ("Closing of title for the purchase hereunder ('Closing') shall be held on or before ninety (90) days following Effective Date of this Agreement with time being of the essence.").

completion of the assignment of and assumption" of the seller's existing mortgage loan, provided that Apartments paid an additional $250,000 to the escrow agent.[6]  If closing did not "occur on the [c]losing date"—i.e., March 10, 2022—or "the extended [c]losing date, unless due to a default by [Associates]," all deposits were to be released to Associates.[7]

The Agreement contemplated that Apartments could seek the assignment and assumption of Associates' mortgage loan on the property.[8]  Before finalizing the Agreement, the parties had exchanged two drafts of the contract referring to Apartments' ability to assume the mortgage.[9]  Associates also gave Apartments

---

[6] *Id.* ("Notwithstanding the foregoing, Purchaser shall have the one time right to extend the Closing by up to thirty (30) days provided that the extension is required for approval and completion of the assignment of and assumption by the Buyer of Seller's Mortgage Loan (as hereinafter defined) and provided Buyer posts a second non-refundable (except as set forth herein) but applicable deposit of Two Hundred Fifty Thousand Dollars ($250,000.00) with the Escrow Agent.").

[7] *Id.*

[8] *Id.* ¶ 4 ("In the event that Seller's Lender does not approve of the assignment and assumption of the Mortgage Loan by Buyer or the Buyer elects not to proceed with the assignment and assumption of the Mortgage Loan, then Buyer shall proceed with the purchase of the Property and Buyer shall be responsible for any and all prepayment fees related to the Mortgage Loan and Seller shall satisfy the Mortgage Loan from the proceeds of the sale.").

[9] Am. Compl. ¶¶ 4, 11; Final Report 2-3; *see also* Def.'s Answering Br. in Opp. to Pl.'s Exceptions to [Magistrate's] Final Report (Dkt. 31) ("Def.'s Answering Exceptions Br.") Exs. A & B.  The defendant's motion to dismiss briefing before the Magistrate purported to attach these drafts.  *See* Def.'s Opening Br. in Supp. of Mot. to Dismiss Am. Compl. (Dkt. 20) ("Def.'s Opening MTD Br.") 5 n.1.

copies of the loan documents associated with the mortgage, including a note, before the Agreement was signed.[10]

The Agreement contained a New Jersey choice of law provision and a forum selection provision requiring litigation concerning the Agreement to be brought in New Jersey state court.[11]

Two months after the Agreement was executed, on February 11, 2022, Associates' mortgage lender told Associates that the mortgage was under a lockout period, which prevented the prepayment of the loan. Associates relayed this information to Apartments on the same day.[12] The lockout period ran through August of 2022.

Apartments opted not to proceed with the assumption and assignment of the mortgage loan. Instead, Apartments took the position that it was entitled to wait until the lockout period expired to close on the property. Apartments desired to

---

[10] Am. Compl. ¶¶ 6, 10; *see also* Def.'s Exceptions Answering Br. Ex. C ("Note"). The note described the terms under which it would be subject to a lockout period. Note ¶ 1(a). The defendants' motion to dismiss briefing described and purported to attach the Note. Def.'s Opening MTD Br. 5 n.1.

[11] Agreement ¶ 17.7 ("This Agreement shall be governed and construed according to the laws of the State of New Jersey. Any litigation between the parties or otherwise related to this Agreement must be brought within the Superior Court of New Jersey in Camden County.").

[12] Am. Compl. ¶ 14.

obtain a new loan and pay the defeasance fee for the defendant's payoff, which would require a new closing date.[13]

Apartments failed to close by the March 10, 2022 closing date specified by the Agreement.[14]  On March 18, Associates informed Apartments that the deadline to close had passed and purported to terminate the Agreement.[15]  Apartments insisted that because the mortgage and associated note were subject to a lockout, it was entitled to extend the closing deadline until after the lockout period expired.[16]

Apartments proceeded to file litigation in this court.[17]  After Associates moved to dismiss, Apartments filed an Amended Complaint on July 7, 2022 (the "Complaint").[18]   The Complaint includes identical claims seeking specific performance of the Agreement in Counts I and II and, alternatively, a claim for breach of contract seeking money damages in Count III.[19]

---

[13] *Id.* ¶ 16; Final Report 5.

[14] Final Report 5; *see* Am. Compl. Ex. B.

[15] Am. Compl. ¶ 16; *see* Am. Compl. Ex. B; Final Report 5.

[16] Am. Compl. ¶ 15.

[17] Dkt. 1.

[18] Dkt. 15.

[19] Am. Compl. ¶¶ 18-24.

Associates moved to dismiss Counts I and II under Court of Chancery Rule 12(b)(6) for failure to state a claim.[20] As to Count III, Associates argued that the court lacked subject matter jurisdiction absent an available equitable remedy and that any remaining claims should be heard in New Jersey.[21]

After briefing and oral argument, the Magistrate issued her Final Report on March 31, 2023.[22] She concluded that Apartments failed to demonstrate its entitlement to specific performance and recommended the dismissal of Counts I and II.[23] Absent an equitable claim or available equitable relief, she recommended that the Amended Complaint be dismissed because this court lacks subject matter jurisdiction over Count III.[24] She declined to address the forum selection clause.[25]

---

[20] Def.'s Opening MTD Br. 9-13.

[21] *Id.* at 13. The defendant asserts that this court and the New Jersey state courts have concurrent jurisdiction. Def.'s Exceptions Answering Br. 6 ("The Superior Court of Camden County, New Jersey has concurrent jurisdiction along with the Delaware courts to hear the dispute.").

[22] Dkts. 16, 20, 22-23, 26-27.

[23] Final Report 14; *see* Ct. Ch. R. 12(b)(6).

[24] Final Report 15-16; *see* Ct. Ch. R. 12(b)(1).

[25] Final Report 16.

## II.    ANALYSIS

The Court of Chancery applies a de novo standard when reviewing exceptions to a Magistrate's final report.[26] The exceptions are reviewed "on the record before the Magistrate, unless the Court determines otherwise for good cause shown."[27]

The plaintiff's exceptions fall into three categories. First, it argues that it pleaded facts making it reasonably conceivable that it could establish a right to specific performance in Counts I and II.[28] Second, it argues that—to the extent it prevails on the first argument—the court should exercise clean up jurisdiction over Count III.[29] Third, it maintains that this court should not enforce the New Jersey forum selection clause because the action requires the conveyance of real property in Delaware.[30] A new hearing is unnecessary, as none of the exceptions raise issues requiring credibility determinations.[31]

---

[26] *See* Ct. Ch. R. 144(a); *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

[27] Ct. Ch. R. 144(a).

[28] Pl.'s Opening Br. in Supp. of its Exceptions (Dkt. 29) ("Pl.'s Opening Exceptions Br.") 44.

[29] *Id.* at 61.

[30] *Id.* at 65.

[31] *DiGiacobbe*, 743 A.2d at 184.

## A.    Specific Performance

A party seeking specific performance of a contract must establish, by clear and convincing evidence, that "(1) a valid contract exists, (2) he is ready, willing, and able to perform, and (3) that the balance of equities tips in favor of the party seeking performance."[32]  At the motion to dismiss stage, the court must consider whether it is "reasonably conceivable" that the plaintiff could demonstrate these factors based on the facts alleged.[33]

The allegations in the Complaint fail to meet this standard.  It is not reasonably conceivable that the plaintiff could prove its entitlement to the "extraordinary remedy" of specific performance by clear and convincing evidence.[34]

The Agreement includes a "time is of the essence" clause requiring the plaintiff to close on the property by March 10, 2022.  "It is fundamental that where

---

[32] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010); *see Pulieri v. Boardwalk Props., LLC*, 2015 WL 691449, at *5 (Del. Ch. Feb. 18, 2015) ("Where a party seeks an award of specific performance . . . the burden of proof is clear and convincing evidence.").

[33] *Pulieri*, 2015 WL 691449, at *5 (citing *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009)); *see also PharmAthene, Inc. v. SIGA Techs., Inc.*, 2008 WL 151855, at *15 (Del. Ch. Jan. 16, 2008); *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (setting forth the operative reasonable conceivability standard).

[34] *Pulieri*, 2015 WL 691449, at *6 (determining at the pleadings stage that the plaintiff would be unable to meet the clear and convincing evidence standard to obtain specific performance).

the time of performance is expressly made of the essence of a contract, a plaintiff must have performed his part of the contract within the specified time if he is to be entitled to specific performance."[35] "When time is of the essence in a contract, a failure to perform by the time stated is a material breach of the contract that will discharge the non-breaching party's obligation to perform its side of the bargain."[36] Yet, Apartments did not close by March 10, in breach of a material term of the Agreement. Specific performance is therefore unavailable to the plaintiff unless it is "excused from performance of that obligation."[37]

The plaintiff maintains that its failure to close is excused because Associates could not deliver a marketable title due to the lockout.[38] It avers that the closing date should be extended until the lockout's expiration.[39] But it is not reasonably conceivable, based on the allegations in the Complaint, that Associates prevented Apartments from closing by March 10.

---

[35] *Morgan v. Wells*, 80 A.2d 504, 506 (Del. Ch. 1951) (citations omitted).

[36] *HFIN, Inc. v. Intel Corp.*, 2007 WL 1309376, at *9 (Del. Ch. 2007).

[37] *Walton v. Beale*, 2006 WL 265489, at *3 (Del. Ch. Jan. 30, 2006).

[38] Pl.'s Answering Brief in Opposition to Def.'s Mot. to Dismiss Am. Compl. (Dkt. 22) ("Pl.'s MTD Br.") 37-38. Specifically, it invokes the prevention doctrine. *Id.* Although Apartments alleges that Associates failed to inform it that a lockout could occur, it concedes that Associates produced a copy of the note and loan documents before the Agreement's execution. Am. Compl. ¶¶ 6, 12.

[39] Pl.'s MTD Br. 37-38; Am. Compl. 35.

When the lockup occurred, Apartments was not without a mechanism to timely close: it had an option to assume the mortgage under Section 4 of the Agreement.[40] There is no indication that Associates prevented Apartments from assuming the mortgage. Rather, Apartments admittedly opted not to proceed.[41] That choice had a consequence.[42] If Apartments "elect[ed] not to proceed with the assignment and assumption" of the mortgage loan, the Agreement stated that Apartments "shall proceed with the purchase of the [p]roperty."[43] And if Apartments defaulted, Associates had the right to terminate the Agreement.[44] Given these facts, I cannot reasonably infer that Associates interfered with Apartments' ability to close by March 10 consistent with the time is of the essence clause.[45]

Further, Apartments is not seeking specific performance of the Agreement. It is asking the court to rewrite the contract by extending the closing deadline, and then

---

[40] Agreement ¶ 4.

[41] *Id.* ¶ 15.

[42] *See id.* ¶¶ 4, 10.1.

[43] *Id.*

[44] *Id.* ¶ 10.1.

[45] *Cf. Morgan*, 80 A.2d at 506-07 (refusing to enforce a time is of the essence clause where the plaintiff appeared on the closing date "with the necessary amount of cash to complete the purchase price" and the defendant did not cooperate with the plaintiff's preclosing requests or appear at closing); *Walton*, 2006 WL 265489, at *6 (concluding that a defendant was not entitled to rely on a time is of the essence clause where the defendant prevented the plaintiff from meeting the closing date).

enforce that revised contract. The parties did not bargain for an extension of the closing date beyond a possible 30-day period to accommodate the effectuation of an assignment of the mortgage, which required the plaintiff to pay an additional deposit of $250,000. Such circumstances are not alleged to have occurred. The relief sought by Apartments contravenes the time is of the essence clause and is inconsistent with the Agreement's plain terms.

Accordingly, the Magistrate correctly held that the plaintiff failed to plead facts making it reasonably conceivable that it could prove—by clear and convincing evidence—that it was "ready, willing, and able to close."[46] Counts I and II were appropriately dismissed under Rule 12(b)(6).

## B. Subject Matter Jurisdiction

"The Court of Chancery is a court of limited jurisdiction."[47] Subject matter jurisdiction exists only where "(1) 'a plaintiff states an equitable claim,' (2) 'a

---

[46] Final Report 11-14. The Magistrate also properly declined to consider facts raised by the plaintiff in its motion to dismiss briefing that were absent from the Amended Complaint. *Id.* at 13 n.49.

[47] *Cardinale v. Feingold*, 2023 WL 142510, at *2 (Del. Ch. Jan. 10, 2023).

plaintiff requests equitable relief and there is no adequate remedy at law,' and (3)

'jurisdiction exists by statute.'"[48]

The remaining claim in the Amended Complaint (Count III) is a breach of

contract claim for money damages.[49]  This is a legal claim seeking a legal remedy.[50]

Thus, the Magistrate properly recommended that Count III be dismissed under Rule

12(b)(1) as outside the court's subject matter jurisdiction.[51]

### C.    Forum Selection Provision

The Agreement's forum selection provision selects a New Jersey state court

to resolve disputes.[52]  Apartments alleges that the provision is unenforceable because

this action concerns real property in Delaware.[53]  Associates responds that the matter

---

[48] *Takeda Pharms. U.S.A., Inc. v. Genentech, Inc.*, 2019 WL 1377221, at *4 (Del. Ch. Mar. 26, 2019) (quoting *Delawareans for Educ. Opportunity v. Carney*, 2018 WL 4849935, at *5 (Del. Ch. Oct. 5, 2018)); *see* Ct. Ch. R. 12(b)(1).

[49] Am. Compl. ¶¶ 23-24.

[50] *See Hillsboro Energy, LLC v. Secure Energy, Inc.*, 2008 WL 4561227, at *2 (Del. Ch. Oct. 8, 2008) ("A simple contract claim lacking the requisite equitable hooks will not swing open the doors of equity.").  Any declaratory relief sought in connection with Count III is also legal in nature.  *See Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*, 267 A.2d 586, 591-92 (Del. 1970).

[51] Final Report at 15.  Count III was dismissed with leave to transfer under 10 *Del. C.* § 1902 (and, thus, without prejudice).  *Id.*

[52] Agreement ¶ 17.7.

[53] Am. Compl. ¶ 17; *see* Pl.'s Opening Exceptions Br. 65; *but see In re Doehler Dry Ingredient Sols., LLC*, 2022 WL 4281841, at *4 (Del. Ch. Sept. 15, 2022) ("'[A]n action for specific performance of a contract,' even where it relates to 'property, is in personam insofar as it is sought to compel performance by the defendant.'" (quoting 71 Am. Jur. 2d

is moot because specific performance is unavailable. The defendant further avers that any remaining disputes should be heard in New Jersey.[54]

Because this court lacks subject matter jurisdiction over Count III, it would be improper to advise on whether the claim should be refiled in New Jersey. I therefore decline to address it. The Magistrate likewise (and appropriately) explained that she could not opine on the defendant's alternative argument regarding the forum selection provision.[55]

### D. Fees

Finally, the defendant requests fees as the prevailing party in this litigation.[56] Section 17.6 of the Agreement provides that: "In the event of any litigation arising out of this Agreement, the prevailing party shall be entitled to actual reasonable attorneys' fees plus cost of suit from the unsuccessful party."[57] The matter is remanded to the Magistrate solely to resolve whether Associates is entitled to fees.

---

*Specific Performance* § 196, Westlaw (database updated Aug. 2022)), *aff'd*, 294 A.3d 64 (Del. 2023).

[54] Def.'s Answering Exceptions Br. 24.

[55] Final Report 16.

[56] Def.'s Opening MTD Br. 19; Def.'s Answering Exceptions Br. 26.

[57] Agreement ¶ 17.6.

## III.   CONCLUSION

For the reasons set forth above, the plaintiff's exceptions are overruled.  The Final Report is adopted and affirmed insofar as Counts I and II are dismissed with prejudice and Count III is dismissed without prejudice.  The matter is remanded to the Magistrate to resolve whether the defendant is entitled to fees.  To the extent necessary for this decision to take effect, IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor